EDWARD M. GUSHEE AND WIFE *vs.* THE UNION KNIFE COMPANY AND OTHERS.

New Haven Co., June T., 1886. PARK, C. J., CARPENTER, PARDEE, LOOMIS and GRANGER, Js.

Where a creditor holds a mortgage on real estate and obtains a judgment lien on other real estate of the mortgage debtor for the same debt, there is no rule of equity which will prevent his taking a general decree of foreclosure on the mortgage and judgment lien at the same time.

The statute of 1878 (Session Laws of 1878, ch. 129, sec. 2,) which provides for the appraisal of mortgaged property where on a foreclosure the mortgage becomes absolute, and for the recovery in a later suit of only the balance of the debt above the value of the property taken by the foreclosure, does not apply to the case.

[Argued June 2d—decided July 8th, 1886.]

SUIT for the foreclosure of a mortgage and judgment lien; brought to the Superior Court in New Haven County.

The complaint alleged that on the 30th of September,

1875, the Naugatuck Wheel Company, a joint stock corpo-
ration, was indebted to Ebenezer H. Ives in the sum of
$8,000, and on that day mortgaged to Ives two pieces of land
in the town of Naugatuck in this state, with factories, dwell-
ing houses and other buildings thereon; that the mortgaged
property was, on the 11th of November, 1881, conveyed,
subject to the mortgage, by the Naugatuck Wheel Company
to the Union Knife Company, the principal defendant, a
joint stock corporation, located in Naugatuck, and that the
grantee assumed and agreed to pay the mortgage debt; that
the Union Knife Company, on the 23d of November, 1881,
conveyed the property to the Hartford Crystal Cutlery
Company, a joint stock corporation located in Naugatuck,
which was now the owner of the same; that the said Eben-
ezer H. Ives had died, leaving a will by which he had be-
queathed the note and mortgage to Fanny S. Gushee, one
of the plaintiffs and wife of Edward M. Gushee, who was
the other plaintiff; that there had been paid only $3,043.60
on the principal of the note; that a judgment had been
obtained by the plaintiffs in the Superior Court in New
Haven County at its September term, 1885, against the
Union Knife Company, on its assumption of and promise to
pay the note, of $5,662.43; that in the suit five pieces of
land in Naugatuck belonging to the company and described
in the complaint had been attached, and after the judgment
had been rendered a certificate of a judgment lien on the
lands attached had been filed according to law; and that
sundry parties named had acquired a later interest in the
lands on which the lien was held, such parties being made
defendants with the Union Knife Company. The complaint
then prayed for a decree of foreclosure of the mortgage
and of the judgment lien.

The Union Knife Company alone made defense, and filed
an answer which, after admitting all the allegations of the
complaint to be true, proceeded as follows:—

"1. This defendant by way of equitable relief, for which
he prays the court, says that the mortgaged premises de-
scribed are more than sufficient to pay all of the plaintiffs'

Gushee v. Union Knife Co.

claim, and the plaintiffs ought not in equity to have a fore-closure of said judgment lien, as said defendant has no interest in said note and mortgage.

"2. This defendant by way of alternative relief prays the court to allow no foreclosure decree on said judgment lien until it shall be determined what the value of said mortgaged premises may be by appraisers duly appointed by this court for that purpose, and if on such appraisal said mortgaged premises shall be appraised for less than said sum so due, then that this defendant shall stand charged under said judgment lien with only the balance so found due over the value of said mortgaged premises."

The plaintiffs filed the following demurrer to this answer:—

"The plaintiffs demur to the answer of the Union Knife Company because—1st. Said company, being the party against whom said judgment was rendered, ought to pay it. 2d. The answer does not allege any tender of said judgment debt. 3d. The plaintiffs are entitled to obtain an actual payment in money from all the property subjected therefor. 4th. If said company believe the mortgaged real estate to be of greater value than the debt, they can pay the debt and be subrogated to the plaintiffs' rights as against the holder of said mortgaged property. 5th. On the facts stated the defendant is not entitled to the relief claimed in said answer."

The court (*Stoddard, J.,*) sustained the demurrer and passed a general decree of foreclosure, embracing all the property covered by the mortgage and the judgment lien. The defendant appealed to this court.

*H. C. Baldwin,* for the appellant.

The defendant corporation owned a large amount of real estate in 1881; the plaintiffs held a mortgage of long standing on other real estate for $8,000; the equity of redemption of the last real estate was conveyed to the defendant with the formal agreement to "assume and pay said mortgage," and by the defendant to another party, the defendant

having now no interest in the equity. The party last mentioned paid part of the mortgage. The plaintiffs brought suit on the defendant's promise to pay the note, and attached all of its real estate. On this suit they obtained a judgment and filed a judgment lien against all the real estate attached. Then they bring a general suit for foreclosure, tack the mortgage and lien together, and say: You must redeem not only the original mortgaged premises, in which you have no interest, but your own estate as well. This defendant, by way of equitable relief, says: You are only entitled to satisfy, out of my estate, what may be found due on the note over and above the value of the original security. This presents the single issue in this case.

An answer to this involves an inquiry into the rights of mortgagees and judgment creditors in the light of purely equity practice. If, on such full inquiry, this court shall find that the views taken by the court below work inequitably toward the debtor, then of course some way of relief must be found, whether it be precisely the one suggested by the debtor or not.

The legislature, by the act of 1878, (p. 341, sec. 2,) recognized the principle of an appraisal of mortgage security for the purpose of extinguishing the debt. Had this defendant been the owner of the equity of redemption in these mortgaged premises, and a foreclosure had been brought, it will not be denied that it would have had the right under this statute to have an appraisal, and if, on such an appraisal, the property should be found of the value of the mortgage note, no judgment could then be had against it for any amount, and if it should be found less, then a judgment for the balance only could be given, and such judgment would be a lien on its property for only that amount, and by paying that it could redeem.

This is not in accordance with the theory of the court below. The court holds that, by virtue of the act of 1881, (authorizing the holder of a mortgage to maintain a suit in his own name on the assumption of the mortgage debt by a grantee,) if the equity of redemption has passed through

the hands of forty different owners, each agreeing to "pay said mortgage," the holder of the mortgage note can maintain suits and obtain judgments against each, attaching all the property of each, and then file judgment liens in each case and bring a general foreclosure, piling up all the bills of costs, which must be added to the original debt and paid in order for any to redeem. It hardly seems as if such a doctrine was in accordance with the spirit of equity. The plaintiff did not loan this money to the defendant, and did not trust in his promise or property to pay, and it would seem as if the claim against the defendant's property should be limited to the sum only which the mortgage property fails to pay, and to ask that we be compelled to pay more than that amount out of our property seems unjust.

Prior to the passage of the act of 1878, creating judgment liens, had such a judgment been obtained the attachment would have created the right for four months after judgment for "an execution set-off" and nothing more. Was this law intended to be used in cases where there was security already, or for the purpose of adding to security already held? It certainly nowhere indicates that it was intended to apply in cases where there was other security for the debt. Mortgage creditors, as such, do not need for their protection any such forced construction as this. The fourth section of the act would seem to indicate that no such use of the act was contemplated.

Where is there authority to couple such judgment lien with prior mortgage security and foreclose generally? Section fifth says:—"Any such lien may be foreclosed or redeemed in the same manner as mortgages upon the same estate."

There is no question but that, under the several acts named, with only one bill of costs, the plaintiffs could have brought a suit for foreclosure on the original mortgage, and made this defendant a party, and, on a proper claim, have had the security appraised and afterwards have obtained judgment against the defendant for whatever balance was left unpaid after the appraisal, and then have filed their

judgment lien for such balance only, and then we would have had to pay that portion only to relieve our property from this lien; and this would really fulfil the spirit of the law and not do violence to the opinion of this court as laid down in *Meech* v. *Ensign*, 49 Conn., 191.

*H. G. Newton*, for the appellees.

GRANGER, J. This is a suit to foreclose a mortgage upon certain property and a judgment lien upon certain other property. It appears that in 1875 the Naugatuck Wheel Company, a joint stock corporation, mortgaged to Ebenezer H. Ives two pieces of land in the town of Naugatuck to secure a note of $8,000; that only about $3,000 of the note has been paid; that the mortgagee has died and by his will given the note and mortgage to Fanny S. Gushee, one of the plaintiffs and wife of the other plaintiff; and that the mortgaged property has been conveyed to the Union Knife Company, the present defendant, which assumed and agreed to pay the mortgage debt. It further appears that the plaintiffs have brought an action against the Union Knife Company upon its promise to pay the mortgage debt, to recover the balance due on the note, and have attached five pieces of land belonging to the company, all in the town of Naugatuck, and obtained judgment against the company in the suit for $5,662, and that a certificate of a judgment lien upon the lands attached has been filed by them. And they now, by the present suit, seek a foreclosure of the mortgage and of the judgment lien.

The defendant in its answer admits all the allegations of the complaint, but asks for equitable relief on the ground that the original mortgage is more than sufficient to pay the remainder of the mortgage debt, and that it would be inequitable that the property covered by the judgment lien should be taken for the debt when it is fully paid by the mortgaged property; and the defendant prays that the latter property may be appraised, and if on appraisal it shall be found of less value than the amount of the mortgage

debt, the lands held by the judgment lien shall stand charged only with the balance of the debt so found to be due.

The plaintiffs demurred to this answer, and the court sustained the demurrer, and no other plea being filed, passed a general decree of foreclosure, covering all the property. From this decree the defendant has appealed.

The statute under which the judgment lien was obtained by the plaintiffs (Acts of 1878, ch. 58,) is a recent one, and few questions have yet arisen as to its operation and effect. The question here raised has never before been presented to this court, but we know of no principle or practice in analogous cases which will sustain the claim of the defendant. The plaintiffs have obtained a legal right to the full security which they hold, and they are entitled to hold it till their debt is paid. The only remedy of the defendant is to pay the debt and thus redeem the property.

The statute (Acts of 1878, ch. 129, sec. 2,) which has been cited by the defendant's counsel as a ground for the granting of the equitable relief asked, has no proper application to the case, and can not, we think, by construction be so extended as to apply to it. That statute applies only to the case of a foreclosure which becomes absolute by a failure to redeem, in which case, if the property is insufficient to pay the debt, the court may appoint appraisers to ascertain its value, and in a suit afterwards brought on the note the excess of the debt above that value may be recovered, and only such excess. It was not intended to apply to the case of a judgment lien already obtained on the mortgage debt. The question here is wholly one of marshaling securities. The judgment lien stands on as legal ground as that of the mortgage, and there is no equitable rule by which we can give one an advantage over the other. If there is reason for limiting the rights of the creditor under the judgment lien, it should be done by legislation. As the statute now stands it provides that the judgment lien "may be foreclosed or redeemed in the same manner as mortgages upon the same estate." Acts of 1878, ch. 58, sec. 5.

There is no error in the judgment complained of.

In this opinion the other judges concurred.